OPINION
Appellant, Steven G. Burch, timely appeals a sentence entered by the Jefferson County Court of Common Pleas following his guilty pleas to two counts of felonious assault with firearm specifications and one count of kidnapping with a firearm specification. For the following reasons, we affirm the sentence of the trial court in part and reverse and modify this sentence in part.
On November 18, 1996, Appellant, Steven G. Burch, entered a Kroger store in Steubenville, Ohio, armed with a .357 magnum revolver. He took Pam Hinkle hostage and held her at gunpoint for several hours. Police arrived at the scene, including the Jefferson County Sheriff and the Steubenville Police Chief, who tried to negotiate the release of the hostage but were unsuccessful. Eventually, Appellant pointed his weapon at the sheriff and chief, threatening them and the life of his hostage. At one point, Appellant fired his weapon at a Steubenville police officer. The situation ended when a police marksman shot Appellant in the neck and disabled him.
On March 12, 1997, Appellant was indicted on four counts of felonious assault and one count of kidnapping, each with a firearm specification, and one count of carrying a concealed weapon. On March 19, 1997, Appellant pled not guilty by reason of insanity to all charges. Following court ordered psychiatric examination and a hearing, the court determined that Appellant was competent to stand trial. Appellant then entered a plea agreement wherein he pled guilty to two counts of felonious assault in violation of R.C. § 2903.11 (A)(2) with firearm specifications and one count of kidnapping in violation of R.C. § 2905.01 (A)(1)(2)(3) with a firearm specification. The trial court accepted the plea agreement on July 24, 1997.
On September 17, 1997, the trial court filed its sentencing order. In count one, felonious assault against Pam Hinkle, the court sentenced Appellant to six years of imprisonment with an additional mandatory three years for the firearm specification. In count two, Hinkle's kidnapping, the court sentenced Appellant to ten years of imprisonment with an additional mandatory three years for the firearm specification. Finally, in count three, felonious assault against the police officer, the court sentenced Appellant to eight years of imprisonment with an additional mandatory three years for the firearm specification. The court ordered that all sentences be served consecutively with the exception of the sentences on the firearm specifications in counts one and two, which the court ordered to be served concurrently.
On September 22, 1997, Appellant filed his notice of appeal. His first assignment of error states:
 "DID THE COURT ERROR [sic] IN SENTENCING THE DEFENDANT ON TWO (2) CONSECUTIVE THREE (3) YEAR TERMS FOR FIREARM SPECIFICATION [sic]?"
Appellant argues that according to the Revised Code, only one mandatory three year sentence may be imposed for firearm specifications to felonies committed as part of the same criminal transaction. Appellant erroneously cites to former R.C. § 2929.71
(B) rather than to R.C. § 2929.14 which became effective July 1, 1996 and is applicable to his case. Appellant argues that "transaction" has been defined to mean, "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." See, State v. Wills (1994), 69 Ohio St.3d 690,691. Appellant concludes that there was only one transaction, as the incident occurred at a single location over a single three hour period and that all the events had the singular purpose of attempting to induce a police-inflicted suicide.
As already stated, Appellant, through his counsel, argues and cites to repealed and inapplicable law. Given the exceptional attention generated by the revision of Ohio sentencing law pursuant to 1995 Am.Sub.S.B. No. 2, such an argument reflects a carelessness we find troubling. Fortunately for Appellant and his counsel, his argument can be reconciled with current, applicable sentencing law.
The revisions occasioned by 1995 Am.Sub.S.B. No. 2 include new guidelines for the appeal of felony sentencing and a new standard of review for appellate courts. State v. Pickford (Feb. 22, 1999), Jefferson App. No. 97-JE-21, unreported, 6. R.C. § 2953.08
(A) provides grounds upon which a defendant may appeal his sentence as of right, including a provision for appeal based on the argument that the sentence is contrary to law. R.C. § 2953.08
(A)(4); State v. Pickford, Id. at 7. A court of appeals no longer applies an abuse of discretion standard when reviewing a felony sentence. State v. Pickford, Id. at 6. Our standard of review is now governed by R.C. § 2953.08 (G), which states in part:
 "(G)(1) The court hearing an appeal of a sentence under division (A) * * * of this section may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds any of the following:
"(a) That the record does not support the sentence;
"* * *
"(d) That the sentence is otherwise contrary to law."
R.C. § 2953.08 (F) addresses what factors a reviewing court is to consider relevant to sentencing. Relevant to the case before us, we may consider the psychiatric reports on the record, the trial record and oral and written statements made to or by the court at the sentencing hearing. R.C. § 2953.08 (F)(1), (2) and (3).
Turning now to Appellant's assignment of error, we note that R.C. § 2929.14 (D)(1)(a)(i) provides for a mandatory additional term of three years for a firearm specification as described in Appellant's indictment. R.C. § 2929.14 (D)(1)(a)(i) further provides that, "[a] court shall not impose more than one additional prison term on an offender under this division for felonies committed as part of the same act or transaction."
In State v. Wills, supra, the Ohio Supreme Court defined "transaction" as used in former R.C. § 2929.71 (B), the predecessor to the statute in question, as "* * * a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." Id., 691.
The Ohio Supreme Court has not reviewed any lower court's application of this test. We are left, then, to examine the opinions of the courts of appeal. Our review leads us to agree with the Tenth District, which concluded that cases which applied the Wills test sought the answer to one common question, that is, to determine, "* * * what was the criminal defendant's purpose or objective in committing each of the separate crimes." State v.Emanuel (Sept. 19, 1996), Franklin App. No. 96 APA01-59, unreported, 8.
In cases where the Wills test was dispositive of issues before this Court, we also sought and applied the answer to the foregoing question. In State v. Gibbons (Jan. 6, 1995), Jefferson App. No. 93-J-47, the defendant entered a bar with a loaded handgun, removed money from the cash register and ordered a barmaid to go to his car with him. The defendant then drove his automobile around Jefferson County and on two separate occasions stopped the car and raped the barmaid. After the second rape, he drove a distance, stopped his car and ordered the victim out of the car and down a path where he shot her. Appellant was sentenced to five consecutive three year terms for firearms specifications corresponding to his convictions on two separate counts of rape, one count of aggravated robbery, one count of kidnapping and one count of felonious assault.
In applying the Wills test, this Court upheld the multiple consecutive firearms specification sentences, determining that, "[t] he evidence clearly demonstrates that appellant's purpose and objective was raping his victim on two different occasions, which differed significantly from his purpose and objective in committing his other crimes, including aggravated robbery, kidnapping and felonious assault." Id., 2.
In State v. Mahone (Aug. 8, 1996), Mahoning App. No. 92 CA 27, unreported, the defendant and two accomplices approached two victims. The defendant brandished a handgun and demanded money from his victims. One victim turned and ran away, hearing gunshots while he fled. The other victim died as a result of a single gunshot wound. The defendant was convicted of aggravated murder and sentenced to life in prison with a mandatory three year sentence for the firearm specification. The defendant was also convicted of aggravated robbery of the surviving victim and sentenced to ten to twenty-five years in prison with three years of actual incarceration for the firearm specification.
On appeal, the defendant argued that the aggravated murder and the aggravated robbery had a logical relationship, were committed within one continuous time sequence and had a common objective developed from a single criminal adventure. We held that although the crimes occurred in sequence and in close proximity, they constituted separate acts as there was no common objective in the robbery of one victim and in the murder of another. Id.
Upon review of the matter before us, we discern that the crimes committed by Appellant did have a common objective. It appears throughout the record that Appellant's actions were motivated by his desire to induce his own police-inflicted death. At sentencing, a mental health professional testified that Appellant was suicidal and that he wanted to die on the day of the hostage situation. Tr. 5, 6. Furthermore, a competency report in the record attests to Appellant's history of suicidal feelings, including on the day of the hostage situation.
At sentencing, Appellant's counsel argued that Appellant had not precipitated a typical hostage situation, which usually revolves around an underlying crime, such as a robbery. Counsel claimed and the trial court evidently agreed that Appellant took a hostage only to induce police into shooting him. Tr. 22. The record reflects that the hostage situation served only as an attempt to induce police to shoot Appellant. There is no indication of any other motive such as robbery, retribution against the hostage or any other individual or to secure any demand by Appellant. Importantly, as evidenced by the findings in its sentencing order the trial court accepted this theory. The order states, "[w]ith respect to all offenses the [c]ourt finds that the offenses were committed by the Defendant as a means of committing suicide * * *"
The crimes for which Appellant was sentenced served his one objective; to effectively commit suicide by inducing the police to kill him. Taking the hostage facilitated this objective. Firing his weapon upon a police officer could not only encourage return fire, but repelling a non-lethal advance by the officer could extend the hostage situation until Appellant's desired result was achieved. Regardless, it is difficult to dispute based on the record that Appellant's actions were aimed at the single objective of drawing lethal police fire. The situation ended with a marksman shooting Appellant through the neck.
Having determined that Appellant's actions had a common purpose and objective, we turn now to the remaining elements of the Wills
test; whether Appellant's actions were bound by time and space.State v. Wills, supra, 691. A review of these elements require little analysis. The hostage situation occurred over several hours. Although the time frame was somewhat extended, there was no fragmentation of the events; this matter entails a single hostage situation as opposed to a crime spree taking place over several hours. Likewise, all of these incidents were confined to a single location. The attack on Ms. Hinkle and the attempt to shoot the police officer all took place within the confines of the grocery store.
We conclude that the assault and kidnapping of Pam Hinkle and the assault on the police officer were part of the same transaction. Thus, the record on appeal does not support the imposition of multiple terms of imprisonment for multiple firearm specifications attendant to those crimes. Such a sentence is contrary to law. R.C. § 2929.14 (D)(1)(a)(i)
Based on the foregoing, we hold that this assignment of error has merit and hereby modify sentencing in this matter to vacate one of the two consecutive three year terms of imprisonment imposed on Appellant in the trial court's sentencing order of September 17, 1997.
Appellant's second assignment of error states:
 "WAS THE CONVICTION OF THE APPELLANT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE?"
Appellant's entire argument states:
 "Yes, the Court did commit error in its sentencing. Revised Code 2929.41 (E)(2) provides: `Consecutive terms of imprisonment shall not exceed . . . (2)An aggregate minimum term of fifteen (15) years . . . where consecutive terms imposed are for felonious [sic] other than aggravated murder or murder.
 "The court in this case made the sentence run consecutively for a total of 24 years instead of fifteen years as required by the Ohio Revised Code Sec. 2929.41 (E)(2) Yonkings v. Wilkerson
(1996), 110 Ohio App.3d 319 is the controlling case on this point."
We again note our concern that Appellant relies on inapplicable law. We further note that Appellant's statement of error is incongruous with his argument. However, we can glean from Appellant's scant argument that he complains that his sentence was contrary to law as it appears to exceed the statutory maximum aggregated felony sentence for the crimes to which he pled guilty.
As Appellant argues that his sentence was contrary to law, we apply the same standard of review as in the first assignment of error. In order to increase, reduce, modify or vacate and remand Appellant's sentence, we must clearly and convincingly find that the sentence is not supported by the record or that the sentence is otherwise contrary to the law. R.C. § 2953.08 (G)
The statute to which Appellant cites in support of his argument is inapplicable. R.C. § 2929.41 has been revised pursuant to 1995 Am.Sub.S.B. No. 2, to eliminate the prohibition against imposing consecutive felony sentences in excess of an aggregate minimum term. With respect to consecutive felony sentences, R.C. § 2929.41
now reads in relevant part:
 "(A) Except as provided in division (B) of this section, division (E) of section 2929.14, or division (D) or (E) of section 2971.03
of the Revised Code, a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment imposed by a court of this state * * *"
R.C. § 2929.14 (E)(1) provides that a mandatory three year sentence for a firearm specification must be served prior to and consecutively to the prison term imposed for the underlying crime. R.C. § 2929.14 (E)(4) provides that:
 "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public* * *"
Furthermore, R.C. § 2929.14 (E)(5) provides that the prison term to be served is the aggregate of all the terms imposed under R.C. § 2929.14 (E)(1)(2)(3) or (4).
In the present case, the trial court sentenced Appellant to consecutive sentences resulting in an aggregate prison term of twenty-four years, plus mandatory terms for gun specifications, (one of which we have herein vacated). In imposing a sentence for the crimes charged, the trial court made specific findings, including,
 "1. The Court specifically finds that the shortest term on any of [the] offenses will demean the seriousness of the offense and will not adequately protect the public and therefore imposes a greater term.
 "2. With respect to Counts I and II the Court finds that Defendant has committed the worse form of the offense. Court II involved a three hour kidnap with a loaded and cocked revolver to the head of the victim for a period of three (3) to four (4) hours. Count III involved an actual shot being fired at a police officer.
 "3. With respect to all offenses the Court finds that the offenses were committed by the Defendant as a means of committing suicide and that the Defendant remains suicidal. In the past, Defendant has attempted suicide on other occasions one of which involved filling a house with natural gas in order to asphyxiate himself which said attempt constituted a substantial physical risk to other persons.
 "4. The Court has every reason to believe that Defendant remains a risk to himself and more importantly to others.
 "5. The Court further finds that the harm caused by this Defendant was great and unusual, particularly to victim Pam Hinkle and to the lesser extent to Officer Rudy Sciarra. In particular the Court finds that the necessity of having a sharpshooter shoot the Defendant while he held his hostage, Pam Hinkle, was extremely stressful to both Pam Hinkle and to the sharpshooter.
 Defendant has a criminal history of violence against his mother (domestic violence) and has attempted suicide in the past which said attempts constituted a physical hazard to other persons."
In light of the trial court's findings in its sentencing order which address the considerations of R.C. § 2929.14 (E), we believe the aggregate sentence imposed on Appellant was supported by the record and is not contrary to law. Therefore, we find this assignment of error to lack merit.
For all the forgoing reasons, we affirm the judgment and sentence of the trial court in part and reverse the judgment and sentence of the trial court in part to modify the sentence of Appellant by vacating one three-year term of imprisonment on one firearm specification.
JUDGMENT: Affirmed in part and reversed in part.
COX, P.J., AND VUKOVICH, J., CONCURS.
APPROVED:
 ____________________________________ CHERYL L. WAITE, JUDGE